| | |
|---|---|
| **LaMonica Herbst & Maniscalco, LLP**<br>3305 Jerusalem Avenue, Suite 201<br>Wantagh, New York 11793<br>(516) 826-6500<br>Jordan Pilevsky, Esq.<br>Michael T. Rozea, Esq. | Hearing Date:   August 28, 2018 at 9:30 a.m.<br>Objections Due:   August 21, 2018 |

*Attorneys for Gary F. Herbst, as Plan Administrator*
*of the bankruptcy estate of Exeter Holding, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

DIRK K. GEITHNER,

                        Debtor.
-------------------------------------------------------------x

Chapter 13
Case No.: 18-36223 (CGM)

**NOTICE OF MOTION OF THE PLAN ADMINISTRATOR OF THE BANKRUPTCY ESTATE OF EXETER HOLDING, LTD. SEEKING THE ENTRY OF AN ORDER DISMISSING THE DEBTOR'S CASE, OR IN THE ALTERNATIVE, CONVERTING THE DEBTOR'S CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

       **PLEASE TAKE NOTICE,** that on **August 28, 2018 at 9:30 a.m.,** or as soon thereafter as counsel can be heard, a hearing (the "Hearing") will be held before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York located at 355 Main Street, Poughkeepsie, New York 12601-3315, upon the annexed motion (the "Motion") of Gary F. Herbst, Esq., solely in his capacity as the plan administrator (the "Plan Administrator") of the bankruptcy estate of Exeter Holding, Ltd. ("Exeter"), a secured creditor, by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking the entry of an Order, pursuant to 11 U.S.C. §§ 105(a), 109(e), 521, 704(a)(8), 1307(c), 1322 and 1325, dismissing the Chapter 13 case of Dirk K. Geithner ("Geithner"), or in the alternative, converting Geithner's case to one under Chapter 7 of the Bankruptcy Code, and granting such other and further relief as this Court deems necessary.

1

**PLEASE TAKE FURTHER NOTICE**, that objections to the relief requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and Rules, state with particularity the grounds therefor and be filed with the Court, with a courtesy copy to the Chambers of the Honorable Cecelia G. Morris, and served upon, so as to be received by LaMonica Herbst & Maniscalco, LLP, the attorneys for the Plan Administrator, Attn: Jordan Pilevsky, Esq., **no later than August 21, 2018** as follows: (a) (i) through the Bankruptcy Court's electronic filing system, which may be accessed through the internet at the Bankruptcy Court's website at: https://ecf.nysb.uscourts.gov (ii) in portable document format (PDF) using Adobe Exchange Software for conversion; or (b) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned from time to time without further notice other than announcement of such adjournment in open Court.

Dated: August 10, 2018
      Wantagh, New York

                                          **LaMonica Herbst & Maniscalco, LLP**
                                          Attorneys for the Plan Administrator

                    By:    *s/ Jordan Pilevsky*
                            Jordan Pilevsky, Esq.
                            Michael T. Rozea, Esq.
                            3305 Jerusalem Avenue, Suite 201
                            Wantagh, New York 11793
                            (516) 826-6500

| | |
|---|---|
| **LaMonica Herbst & Maniscalco, LLP**<br>3305 Jerusalem Avenue, Suite 201<br>Wantagh, New York 11793<br>(516) 826-6500<br>Jordan Pilevsky, Esq.<br>Michael T. Rozea, Esq. | Hearing Date:   August 28, 2018 at 9:30 a.m.<br>Objections Due:  August 21, 2018 |

*Attorneys for Gary F. Herbst, as Plan Administrator*
*of the bankruptcy estate of Exeter Holding, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

DIRK K. GEITHNER,

     Debtor.
-------------------------------------------------------------x

Chapter 13
Case No.: 18-36223 (CGM)

**MOTION OF THE PLAN ADMINISTRATOR OF THE BANKRUPTCY ESTATE OF EXETER HOLDING, LTD. SEEKING THE ENTRY OF AN ORDER DISMISSING THE DEBTOR'S CASE, OR IN THE ALTERNATIVE, CONVERTING THE DEBTOR'S CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

To: The Honorable Cecelia G. Morris
   Chief United States Bankruptcy Judge
   United States Bankruptcy Court
   Southern District of New York:

   Gary F. Herbst, Esq., solely in his capacity as the plan administrator (the "Plan Administrator") of the bankruptcy estate of Exeter Holding, Ltd. ("Exeter"), a secured creditor, by his attorneys, LaMonica Herbst & Maniscalco, LLP, in support of his motion (the "Motion") seeking the entry of an Order, pursuant to 11 U.S.C. §§ 105(a), 109(e), 521, 704(a)(8), 1307(c), 1322 and 1325, dismissing the Chapter 13 case of Dirk K. Geithner ("Geithner"), or in the alternative, converting Geithner's case to one under Chapter 7 of the Bankruptcy Code, and granting such other and further relief as this Court deems necessary.

### Jurisdiction and Statutory Predicates

  1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court

3

pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief requested herein, include, *inter alia,* 11 U.S.C. §§ 105(a), 109(e), 521, 704(a)(8), 1307(c), 1322 and 1325.

## Preliminary Statement

2. Geithner's bankruptcy filing is nothing more than a dilatory and bad faith act. First and foremost, Geithner does not qualify to be a debtor under Chapter 13 of the Bankruptcy pursuant to 11 U.S.C. § 109(e). Geithner's noncontingent, liquidated secured debt is at least $1,516,546.70. Geithner, however, conveniently failed to disclose the universe of his secured debt on his bankruptcy schedules. As demonstrated below, the aggregate sum of Geithner's noncontingent, liquidated secured debt make him statutorily ineligible to be a Chapter 13 debtor.

3. As further discussed below, Geithner submitted his bankruptcy schedules, under the penalties of perjury, with a valuation of his Real Property (defined below) that is 220% higher than an appraisal recently submitted in the Foreclosure Proceeding (defined below).

4. Moreover, Geithner's income listed on his Schedule I is also drastically different and 325% higher than his annual historical earnings from 2016 through the bankruptcy filing date as reflected on his statement of financial affairs.

5. Significantly, Geithner's proposed plan is patently unconfirmable as it projects monthly plan payments of $12,000 without consideration to any of the creditors omitted from his schedules and which payment is belied by his true income.

6. Based on the foregoing, and for the reasons set forth herein, the Plan Administrator respectfully submits that this case should be dismissed or, in the alternative, this case should be converted to one under Chapter 7 of the Bankruptcy Code.

4

**Background**

**A.    The Exeter Bankruptcy Filing**

7. Prior to its bankruptcy, Exeter was in the business of making construction finance loans and bridge loans to the construction industry. As discussed herein, Exeter made several secured loans to Geithner.

8. On November 9, 2011, an involuntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") was filed against Exeter in the United States Bankruptcy Court for the Eastern District of New York (the "EDNY Court") and assigned case number 11-77954-AST.

9. On January 18, 2012, the EDNY Court entered an Order for Relief under Chapter 11 of the Bankruptcy Code.

10. By Order dated July 8, 2013 (the "Exeter Confirmation Order"), the EDNY Court confirmed Exeter's Amended Plan of Liquidation (the "Exeter Plan").

11. Pursuant to the Exeter Plan, the Plan Administrator was appointed, which appointment was approved by the EDNY Court in the Exeter Confirmation Order. In accordance with the Exeter Plan, the Plan Administrator succeeded to the powers as would have been applicable to Exeter's officers, directors and shareholders and has the authority to take all actions that may be, or could have been, taken by Exeter's officers, directors and shareholders.

12. Among other assets, the Exeter estate maintained and/or maintains secured interests in various real properties on account of several mortgages and judgments. Since his appointment, the Plan Administrator has pursued the litigation and liquidation with respect to Exeter's mortgage portfolio, including loans made to Geithner.

**B.    The Geithner Mortgages**

    i.    The Consolidated Mortgage

13.    On or about June 1, 2005, Geithner borrowed the sum of $535,000 from Exeter. In exchange for the loan, Geithner agreed to repay the sum of $535,000, together with interest, to Exeter. To evidence Geithner's payment obligation for this loan, Geithner executed and delivered to Exeter a Mortgage Note executed June 1, 2005. As collateral security for payment on this loan, Geithner executed and delivered to Exeter a mortgage executed on June 1, 2005 (the "First Mortgage").

14.    On or about June 1, 2005, Geithner borrowed the sum of $140,000 from Exeter. In exchange for this loan, Geithner agreed to repay the sum of $140,000, together with interest, to Exeter. To evidence Geithner's payment obligation for this loan, Geithner executed and delivered to Exeter a Building Mortgage Note executed on June 1, 2005 and a Building Loan Agreement executed on June 1, 2005 (the "First Building Loan").

15.    As collateral security, Geithner executed and delivered to Exeter a Mortgage and Consolidation Agreement executed on June 1, 2005 which consolidated the First Mortgage and the First Building Loan liens in the respective amounts of $535,000 and $140,000 forming a single lien in the amount of $675,000 (the "Consolidated Mortgage"). The Consolidated Mortgage is secured against the real property located at, and known as, 49 Mountainview Road, Cold Spring, New York 10516, situated in the County of Putnam, Town of Philipstown, and designated Section 16.11, Block 1, Lot 4 (the "Real Property").

    ii.    The Subordinate Mortgage

16.    On or about May 11, 2006, Geithner borrowed the sum of $200,000 from Exeter. In exchange for this loan, Geithner agreed to repay the sum of $200,000, together with interest,

6

to Exeter. To evidence Geithner's obligation for the payment of this loan, Geithner executed and delivered to Exeter a Building Mortgage Note dated May 11, 2006 and a Building Loan Agreement dated May 11, 2006. As collateral security, Geithner executed and delivered to Exeter a mortgage dated May 11, 2006 forming a subordinate lien in the amount of $200,000 (the "Subordinate Mortgage"). The Subordinate Mortgage is secured against the Real Property.

    iii.    The Immediate Default

17. Geithner defaulted on both the Consolidated Mortgage and Subordinate Mortgage in 2006.

**C.    The Geithner Foreclosure Proceeding**

    i.    The Pleadings

18. On or about January 28, 2011, Exeter commenced a foreclosure proceeding (the "Foreclosure Proceeding") by the filing of a complaint (the "Complaint") and captioned as, *Exeter Holding, Ltd. v. Dirk K. Geithner and the People of the State of New York*, assigned Index No. 223-2011, pending in the Supreme Court of the State of New York, County of Putnam (the "State Court"). In the Foreclosure Proceeding, Exeter sought to foreclose on the Consolidated Mortgage and the Subordinate Mortgage.

19. On March 24, 2011, Geithner interposed an answer to the Complaint with counter-claims.

    ii.    The CPLR 3408 Mandatory Settlement Conferences

20. Pursuant to CPLR 3408, Exeter and Geithner appeared at eight (8) mandatory settlement conferences in the Foreclosure Proceeding over a period of three and one-half (3.5) years. Specifically, the parties appeared at such settlement conferences on:

- August 10, 2011
- September 28, 2011

- February 20, 2013
- June 4, 2013
- September 17, 2013
- November 15, 2013
- December 20, 2013
- January 22, 2014

The matter was then released from the settlement conference part.

    iii.    <u>Discovery and Motion Practice</u>

21.    On or about July 17, 2014, Exeter, acting through the Plan Administrator, filed a motion for summary judgment. In response, on or about August 28, 2014, Geithner filed a cross motion for summary judgment. In response, on or about October 9, 2014, Exeter filed an affirmation in opposition. On or about March 6, 2015, the State Court denied both motions upon finding that although Exeter had established a prima facie entitlement to summary judgment, the Defendant established a triable issue of fact.

22.    At a pre-trial conference held on April 6, 2015, the State Court directed Exeter to conduct an examination before trial of Geithner (the "<u>EBT</u>"). On May 7, 2015, Exeter conducted the EBT of Geithner.

23.    As a result of testimony solicited at the EBT, Exeter filed a motion for, among other things, leave to file and serve an amended complaint to assert a claim pursuant to the doctrine of equitable assignment by subrogation, based upon the use of Exeter's June 1, 2005 mortgage proceeds to satisfy prior liens encumbering the Real Property.

24.    On or about November 11, 2016, the State Court granted Exeter's motion, over Geithner's opposition, granting leave to file and serve an amended complaint to assert a claim pursuant to the doctrine of equitable assignment by subrogation, based upon the use of Exeter's June 1, 2005 mortgage proceeds to satisfy prior liens encumbering the Real Property. In

connection therewith, Exeter filed an amended verified complaint (the "Amended Verified Complaint").

25. On March 22, 2017, Exeter filed a motion for partial summary judgment on its third cause of action in its Amended Verified Complaint for judgment declaring Exeter to be the holder of an equitable first mortgage lien pursuant to the doctrine of equitable assignment by subrogation encumbering the Real Property in a sum of not less than $434,814.11 together with interest at 9% from June 1, 2005 in connection with the First Mortgage.

26. By Order dated November 2, 2017 and entered November 6, 2017, Exeter's motions for summary judgment were granted over the objections of Geithner, and a referee was appointed compute.

27. A formal Referee's Hearing was noticed for December 4, 2017 with a proposed Referee's Report attached. Geithner requested, and was afforded, an opportunity to submit a formal written objection to the Proposed Report of Referee to Compute. On or about January 25, 2018, the Referee executed a final Referee's Report dated January 25, 2018. On January 25, 2018, Exeter filed a motion to Confirm the Referee's Report and for entry of a Judgment of Foreclosure and Sale.

28. By Order dated May 8, 2018 and entered on May 14, 2018, the State Court granted Exeter's motion to Confirm the Referee's Report and for entry of a Judgment of Foreclosure and Sale, over the objections of Geithner. The State Court executed a Judgment of Foreclosure and Sale dated May 8, 2018 and entered May 14, 2018 granting judgment in favor of Exeter in connection with its equitable subrogation claim on the Consolidated Mortgage in the amount of $610,995.25 as of December 31, 2017 (the "Judgment of Foreclosure"). A copy of the Judgment of Foreclosure is annexed as **Exhibit "A"**.

9

29. A foreclosure auction sale was scheduled to be held on July 25, 2018. The sale was stayed due to Geithner's bankruptcy filing on July 24, 2018.

**D.   The Geithner Bankruptcy Filing**

30. On July 24, 2018, Geithner filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "SDNY Court").

31. On August 7, 2018, Geithner filed his schedules (the "Schedules"), Chapter 13 statement of current monthly income (the "Statement of Income") statement of financial affairs (the "SOFA") and Chapter 13 Model Plan (the "Plan"). See Dkt. Nos. 10, 11, 12 and 13.

**Grounds for Dismissal**

**E.   Geithner is Ineligible to be a Debtor in Chapter 13 Pursuant to 11 U.S.C. § 109(e)**

32. Section 109(e) of the Bankruptcy Code provides, in pertinent part,

> Only an individual with regular income that owes, on the date of the filing of the petition noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e)

33. In his Schedules, Geithner fails to disclose the full extent of his secured debts. Specifically, Geithner only lists the amount of the Judgment of Foreclosure of $610,995.25 with complete disregard to seven months of accrued interest thereon. Geithner also fails to disclose the existence of the Subordinate Mortgage of $740,000.00 and the fact that he neglects to pay his property taxes. Indeed, Geithner has committed and suffered waste of the Real Property by

10

failing to pay the property taxes which arrears through June 30, 2018 are $126,938.61. A copy of the Property Tax Search is annexed hereto as **Exhibit "B"**.

34. In reality, Geithner has noncontingent, liquidated, secured debts of at least $1,516,546.70, consisting of (i) $649,608.09 in connection with Exeter's Judgment of Foreclosure on the third cause of action (equitable subrogation) in the Amended Verified Complaint; (ii) $740,000.00 on account of the Subordinate Mortgage; (iii) $126,938.61 of property taxes June 30, 2018. Noteworthy is that the aforesaid amounts do not even include the full amount on the Consolidated Mortgage beyond the equitable subrogation claim. As a result, Geithner fails to remain under the threshold amount of $1,184,200.00 for secured debt by at least $332,346.70.

35. A computation of for the Judgment amount and the Subordinate Mortgage are below:

| Judgment of Foreclosure | |
|---|---|
| Amount of Judgment as of 12/31/2017 | $610,995.25 |
| Interest on Judgment | $33,604.74 |
| 1/1/2018 to 8/10/2018 (220 days) at 9% | [($610,995.25 x .90)/360 = $152.7488125 per diem x 220 days = $33,604.74 rounded] |
| Fees and costs on Judgment | $2,465.50 |
| Interest on Judgment fees and costs | $135.60 |
| 1/1/2018 to 8/10/2018 (220 days) at 9% | [($2,465.50 x .90)/360 = $6.16375 per diem x 220 days = $135.60 rounded] |
| Referee's Fee for hearing, computation and adjourned sale | $1,650.00 |
| Publication expense for adjourned sale | $757.00 |
| **Total** | **$649,608.09** |

| **Subordinate Mortgage** | |
|---|---|
| Unpaid Principle Balance | $200,000.00 |
|  | [($200,000.00 x .24)/360 = $133.3333333333333 per diem x 4,050 days = $540,000.00] |
| Interest on Unpaid Principle Balance 5/11/2007 to 8/10/2018 (4,050 days) | $540,000.00 |
| **Total** | **$740,000.00** |

36.    Accordingly, Geithner is statutorily ineligible to be a Chapter 13 debtor and his case should be dismissed.

37.    Bankruptcy Courts and Circuit Courts routinely hold that a Chapter 13 debtor should not be given unilateral power to manipulate his eligibility for Chapter 13 relief simply by filing false schedules which omit noncontingent, liquidated and secured debt to avoid requirements under Section 109(e) of the Bankruptcy Code. *Scovis v. Henrichsen* (*In re Scovis*), 249 F.3d 975, 983 (9th Cir. 2001) (*citing Brown & Co. Securities Corp. v. Balbus* (*In re Balbus*), 933 F.2d 246, 247 (4th Cir.1991); *Miller v. United States*, 907 F.2d 80, 81–82 (8th Cir.1990); *In re Day*, 747 F.2d 405, 407 (7th Cir.1984); *In re Soderland*, 236 B.R. at 273–74); *see also*, *In re Rifkin*, 124 B.R. 626, 629 (Bankr. E.D.N.Y. 1991) (citations omitted); *In re Jerome*, 112 B.R. 563, 566 (Bankr. S.D.N.Y. 1990).

38.    Although the inquiry under Section 109(e) of the Bankruptcy Code begins with a review of a debtor's schedules, such schedules "may be an imprecise measure of how much is owed by the debtor as of the filing date . . . ." *In re Stebbins*, 2015 Bankr. Lexis 551 at *9-10 (Bankr. E.D.N.Y. Feb. 24, 2015). Therefore, a court may conduct its analysis based on materials outside the debtor's schedules. *Id.* at *11-12. "The reason for allowing courts to look beyond schedules and petitions is to prevent a debtor from circumventing the rules." *Id.*

39. Here, Geithner's bankruptcy filings are replete with bad faith omissions and attempts to circumvent the Bankruptcy Code and Rules in an effort to further delay the liquidation of the Real Property. Not only has Geithner failed to pay property taxes on the Real Property over numerous years but has also conveniently failed to disclose them as a debt on his Schedules. Moreover, Geithner concealed from the SDNY Court the existence of the Subordinate Mortgage as such disclosures would lead to his disqualification under Chapter 13 of the Bankruptcy Code.

40. Based on the foregoing, the aggregate amount of Geithner's secured debt (most of which he has concealed) is in excess of the threshold amount under Section 109(e) of the Bankruptcy. Accordingly, Geithner is ineligible for relief under Chapter 13 of the Bankruptcy Code and his case should be dismissed.

**F.    Geithner's Case Should Be Dismissed as Bad Faith Filing Pursuant to 11 U.S.C. §1307**

41. Even assuming, *arguendo*, that the SDNY Court does not dismiss his Chapter 13 case under Section 109(e) of the Bankruptcy Code, Geithner's case warrants dismissal as his bankruptcy filings are replete with inaccuracies and misrepresentations.

42. In addition to his failure to disclose his secured debts and their respective amounts, Geithner, under the penalties of perjury, provided the SDNY Court with misleading and contradictory statements. Such false statements serve to evidence that Geithner is attempting to cause additional undue delay to his secured creditors

43. First, Geithner failed to provide a true valuation of the Real Property. Indeed, on Schedule A to his Petition, Geithner testifies that the Real Property has a fair market value of $900,000. A copy of Geithner's "Schedule A/B Property" is annexed as **Exhibit "C"**.

13

44.     In contrast, however, Geithner previously obtained, and provided the Plan Administrator, with an appraisal, as of April 11, 2017, which values the Real Property at only $407,900. Clearly, Geithner provided the SDNY Court with an inflated and misleading value of the Real Property which is in direct contrast to an actual appraisal he commissioned. A copy of the 2017 Appraisal is annexed as **Exhibit "D"**.

45.     Second, Geithner's representations regarding his monthly income are inconsistent. Specifically, on Schedule I to this Petition, Geithner lists his net monthly income received from operating a business as $25,400. His Chapter 13 Statement of Current Monthly Income reflects his monthly income as $24,500[1] and annual income as $294,000. Copies of Geithner's Schedule I and Chapter 13 Statement of Current Monthly Income are annexed as **Exhibit "E"**.

46.     However, Geithner's statements on his SOFA directly contradict the income listed on Schedule I and further calls Geithner's credibility into question. In response to Part 2, questions 4, Geithner attests to his annual salary as follows: (i) $50,000 for January 1, 2018 through July 24, 2018; (ii) $90,000 for the year 2017; and (iii) $70,000 for the year 2016. Accordingly, Geithner's income for the 2018 year to through his bankruptcy filing date are on track to match his prior year earnings which are only a fraction of what he lists his income as on Schedule I. Rather, Geithner's Schedule I appears to be a hypothetical projection not based in reality. A copy of the SOFA is annexed hereto as **Exhibit "F"**

47.     Third, Geithner lists the address for Exeter as 404 Camino del Rio South, Suite 600, San Diego CA 92108. This is not, and upon information and belief, never was Exeter's address. Further, after noticing the inaccurate address listed on the "bare-boned" petition, the Plan Administrator's counsel advised Geithner's counsel regarding the wrong address and

---

[1] This dollar amount may be a typo as it is $900 less than the amount listed on Schedule I [$25,000 vs. $24,500].

14

directed all communications towards the Plan Administrator. Yet, when he filed his Schedules 14-days later, Geithner continued to list the wrong address for Exeter on his Schedules. Geithner also failed to include the Plan Administrator's address as previously provided.

48. "Bad faith has both an objective and subjective element; the proponent of bad faith must show 'both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code.'" *In re Eatman*, 182 B.R. at 392, quoting *In re Love*, 957 F. 2d 1350, 1357 (7th Cir. 1992).

49. Pursuant to Section 1307(c) of the Bankruptcy Code, a court may dismiss a Chapter 13 case for cause, including where there is "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c). While Section 1307(c) identifies several circumstances warranting dismissal, that list is not exhaustive. "Although 11 U.S.C. § 1307(c) does not expressly equate bad faith with "cause", the bankruptcy court can also dismiss the petition . . . under § 1307(c) if the debtor files his petition in bad faith." *In re Eatman*, 182 B.R. at 392 (citations omitted); *see also Plagakis v. Gelberg* (*In re Plagakis*), 2004 U.S. Dist. LEXIS 2458 at *12 (E.D.N.Y. Jan. 27, 2004) (bad faith filing constitutes "cause" for dismissal). Determination of bad faith is a "highly factual determination" that may also "sweep broadly." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir. 1997). Courts have looked to a variety of factors when considering bad faith. Those factors include: whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code. *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995).

50. Courts have routinely held that dishonesty of a debtor is an indication of bad faith conduct and warrants dismissal. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *see also In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999) (holding bad faith of dishonest debtor, who failed to disclose assets, warranted dismissal); *In re Powers*, 135 B.R. 980, 992 (Bankr. C.D. Cal. 1991) (noting "lack of an honest and genuine desire to use the statutory process to effect a plan of reorganization" is an indicia of bad faith).

51. Courts also consider allegations of inaccurate schedules to be very serious. The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees, and creditors can rely. *See Edwards*, 2003 Bankr. LEXIS 2023 at 23. "[The Court] considers a debtor's duty to file true and complete schedules to be of immense significance when it evaluates whether a debtor has acted in bad faith." *In re Gutierrez*, 528 B.R. 1, 23 (Bankr. D. Vt. 2014). "The duty of disclosure is a basic prerequisite to obtaining a discharge in any bankruptcy." *Obuchowski v. Arnold* (In re Arnold), 2005 Bankr. LEXIS 2167, *6 (Bankr. D. Vt. Nov. 4, 2005). It is always the case that a "debtor has a duty to prepare schedules carefully, completely, and accurately." *In re Gutierrez*, 528 B.R. 1, 16 (Bankr. D. Vt. 2014) (*quoting Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001)).

52. The Plan Administrator respectfully submits that the factors above are satisfied in this case and Geithner's case should be dismissed for bad faith.

**G.  Geithner's Plan is Patently Unconfirmable and His Case Should Be Dismissed Pursuant to 11 U.S.C. § 1325**

53. Moreover, Geithner's proposed Plan is patently unconfirmable and gives rise to dismissal. On August 7, 2018, Geithner filed a proposed Plan. The Plan provides that Geithner will pay $12,000 over 60 months. However, the SOFA reflects that year to date for 2018

16

(January through July), Geithner only earned $50,000. Such earnings are consistent with his prior annual earnings for 2016 and 2017 (which were between $70,000 and $90,000). Based on his historical income, the Plan payments are simply impossible. Significantly, the Plan does not account for all of Geithner debt which, as discussed above, is conveniently absent from his Schedules. In fact, Geithner would need to triple his monthly earnings in order to just pay his Plan payments without leaving over a penny of disposable income. A copy of the Plan is annexed as **Exhibit "G"**.

54.     Section 1325(a)(3) of the Bankruptcy Code states that "the court shall confirm a plan if – (3) the plan has been proposed in good faith and not by any means forbidden by law." Geithner's omissions of various secured debt and false income are clear evidence of bad faith and proof that he is simply looking to further delay the foreclosure of the Real Property. In determining whether a chapter 13 plan has been proposed in good faith, the foregoing inquiry is governed by a "totality of the circumstances" test. *Noreen v. Slattengren*, 974 F.2d 75, 76 (8th Cir. 1992); *Handeen v. LeMaire*, 898 F.2d 1346, 1349 (8th Cir. 1990); *In re Estus*, 695 F.2d 311, 316 (8thCir.1982). The Plan Administrator respectfully submits that the circumstances as detailed herein highlight Geithner's bad faith.

55.     Section 1325(a)(6) of the Bankruptcy Code requires that the court determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Debtors have the burden to prove that their plans are feasible. *See Tillman v. Lombard*, 156 B.R. 156, 158 (Bankr. E.D. Va. 1993).

56.     As such, Geithner's Plan is patently unconfirmable and his case should be dismissed.

17

**H.    In the alternative, Geithner's case should be Converted to One Under Chapter 7**

57.    Under Bankruptcy Code § 1307(c), a court may dismiss or convert a chapter 13 case to case under chapter 7 in certain circumstances. 11 U.S.C. § 1307(c)(1)-(11). This list is "not exhaustive," but exemplary. 9 COLLIER ON BANKRUPTCY ¶ 1307.04 & n.33 (15th ed. rev. 2007) (noting the use of the term "including"). Two of the 11 circumstances apply here. Subsection (c)(1) provides that a court may dismiss or convert a chapter 13 case to a case under chapter 7 where there has been "unreasonable delay by the debtor that is prejudicial to creditors." 11 § 1307(c)(1).

58.    Subsection (c)(5) provides that a court may dismiss or convert a chapter 13 case in the event of "denial of confirmation of a plan under [11 U.S.C. § 1325] and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5).

59.    The Court may convert the case rather than dismiss it if conversion "is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c). For the following reasons, there is cause to convert Geithner's case under subsections (c)(1) and (c)(5).

**1.    Cause to Convert under Bankruptcy Code § 1307(c)(1) Because Geithner's Delays are Prejudicial to Creditors**

60.    As set forth above, Geithner's bankruptcy filing is nothing more than a dilatory and bad faith act. Indeed, Geithner does not qualify to be a debtor under Chapter 13 of the Bankruptcy pursuant to 11 U.S.C. § 109(e) as he exceeds the secured debt limit. Moreover, Geithner's income reflected on his schedules and SOFA is inconsistent. Upon review of his historical as discussed above, Geithner's proposed plan is patently unconfirmable as it projects monthly plan payments of $12,000 which are not feasible given his true income and secured creditor base.

61. Accordingly, Geithner's delay and bad faith filing is prejudicial to the Plan Administrator and in the event that the Court does not dismiss this case, conversion is in the best interests of the creditors.

### 2. Cause to Convert under Bankruptcy Code § 1307(c)(5) Because Debtor's Plan is Infeasible

62. As set forth above, Geithner's proposed plan is not feasible. Subsection (c)(5), allowing a court to dismiss a case where the plan is not confirmable, references Bankruptcy Code § 1325(a)(6), "[b]y far the most important criterion for the confirmation of a chapter 13 plan." 9 COLLIER ON BANKRUPTCY ¶ 1325.07. Section 1325(a)(6) requires that the court determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Debtors have the burden to prove that their plans are feasible. *See Tillman v. Lombard*, 156 B.R. 156, 158 (Bankr. E.D. Va. 1993).

63. "A definite declaration as to the source and the amount of funds necessary to enable the debtor to make the plan payments is required." *In re Wagner*, 259 B.R. 694, 700 (B.A.P. 8th Cir. 2001) (citation omitted)*; see also In re Schenk*, 67 B.R. 137 (Bankr. D. Mont. 1986) (plan not feasible where debtor failed to explain how he would obtain the funds necessary to pay the later lump sum due on his proposed plan). Here, Geithner's plan is not feasible because (i) it is based on plan payments that are simply impossible given the income stated on his SOFA and (ii) it does not account for all the Geithner debt, including the Subordinate Mortgage and the property taxes.

### 3. Conversion is in the Best Interests of the Creditors and the Estate

64. Having established that cause is present to convert or dismiss, and in the event the Court does not dismiss this case, the Plan Administrator submits that conversion is in the best interests of the creditor as Geithner has potentially valuable assets to administer in the estate. *See*

19

KIETH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3d ED. § 312.1 (2000 & Supp. 2004) ("If there are assets to be administered, conversion will usually be the better bet for the general creditor."). Furthermore, the appointment of an independent and disinterested trustee upon conversion would ensure the prompt liquidation of assets. Geithner has demonstrated by his delays that judicial and administrative oversight is essential to move forward on these pursuits. *See, e.g.*, *In re Chapter 13*, 219 B.R. 946 (B.A.P. 2d Cir. 1998) (finding conversion rather than dismissal appropriate where, *inter alia*, the debtor "persisted in delaying the sale of property, the proceeds of which were to be used to pay creditors").

65. No previous request for the relief sought herein has been made by the Plan Administrator to this or to any other Court.

**WHEREFORE**, the Plan Administrator respectfully requests entry of an Order granting the relief requested in the Motion and for such other relief as this Court deems just and proper.

Dated:  August 10, 2018
Wantagh, New York

**LaMonica Herbst & Maniscalco, LLP**
*Attorneys for the Plan Administrator*

By:  *s/ Jordan Pilevsky*
Jordan Pilevsky, Esq.
Michael T. Rozea, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500

*M:\Documents\Company\Cases\Exeter Holding, LTD\Real Property Portfolio\Geithner\Chapter 13\Motion to Dismiss or Convert\NOM and Motion.docx*